**In re Joseph A. BARBARIA, Barbaria Family Trust, Debtors.**

**Bankruptcy Nos. 97–42392, 98–42262.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Dec. 7, 1998.

Jay L. Gueck, Dallas, TX, for debtor.

Ramona Stephens Notinger, Dept. Of Justice, Tax Division, Dallas, TX, Mark Weisbart, Trustee, Dallas, TX, for Internal Revenue Service.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

The Court has before it the question of the dismissal of the captioned related bankruptcy

applies to the deadlines set forth in Rule 8009, the court declines to follow that case.

proceedings along with all attendant adversary proceedings in either case. This memorandum opinion deals with both of the above cited cases which were combined for hearing. Separate orders will be issued as to each case.

The hearing before the Court is actually a rehearing on the Court's earlier order of dismissal. The history of this case is that Joseph A. Barbaria filed a Chapter 11 proceeding which was subsequently converted to Chapter 7 with the appointment of Mark Weisbart as Chapter 7 Trustee. During some of the contentious litigation involved in that case, a bankruptcy proceeding for the Barbaria Family Trust, a trust established by and controlled by Joseph A. Barbaria was filed. It is difficult to recite the history of this case but it can safely be summed up in saying that no meaningful steps toward a reorganization in chapter 11 were ever accomplished and no meaningful steps toward collection and liquidation of a Chapter 7 estate have ever been accomplished. The heart of the dispute that first arose in the Chapter 11 proceeding was the ownership of a home in which Mr. Barbaria lives. The property, earlier stipulated to be worth $700,000.00, is a residence located in Plano, Texas. The mortgage indebtedness against the property is somewhere between $600,-000.00 and $650,000.00. By agreement of the parties, the stay was lifted while the Barbaria case was still pending as a Chapter 11 and immediately litigation arose over attempts enjoin any foreclosure with the parties eventually working out various agreements which may or may not have been consummated at this time. It is clear there is no substantial equity in this property for the benefit of either the bankruptcy estate of the Barbaria Family Trust or Joseph A. Barbaria depending on who the ultimate owner of the property might turn out to be.

It is undisputed that the principal creditor of Mr. Barbaria is the Internal Revenue Service. Evidence has established that Mr. Barbaria apparently failed to file tax returns from sometime in the early 1980s through 1993 or 1994. At some point, apparently in 1993, the Internal Revenue Service instituted an "amnesty" program wherein parties who had failed to file tax returns were allowed to file with the understanding that criminal prosecution for failure to file would be waived. Mr. Barbaria took advantage of that window of opportunity and apparently filed ten or twelve years of delinquent tax returns resulting in a tax liability of about 1.2 million dollars. The dispute now centers over the Internal Revenue Service's efforts to collect the tax liability.

This Court held numerous hearings in the bankruptcy proceeding of Joseph Barbaria both before it was converted and after conversion to Chapter 7 and at one point, orally expressed the opinion that the matter should probably be dismissed. This conclusion was prompted by several factors. First, it was apparent to the Court that no meaningful efforts were being made toward a reorganization of a debtor with an ongoing business; second, it was apparent that the only creditor taking an active interest in the case was the Internal Revenue Service so that this Court was essentially refereeing a two party dispute; and third, it was clear that Mr. Barbaria had no intention of cooperating in a full disclosure of his assets or his income and was only using the bankruptcy process to thwart the Internal Revenue Service in its collection efforts. Mr. Barbaria was placed on the stand on at least three different occasions and consistently refused to answer any question beyond his name and address by invoking his Fifth Amendment privilege against self-incrimination. This Court certainly does not have any quarrel with Mr. Barbaria's right to invoke his Fifth Amendment privilege against self-incrimination and does not attribute an inference of bad faith or bad motive on Mr. Barbaria's part by virtue of his having invoked his constitutional right not to testify. What this Court did note, was that Mr. Barbaria's refusal to testify along with the totality of the circumstances in this case made it clear that no meaningful bankruptcy reorganization or liquidation could take place. No creditor, other than the Internal Revenue Service, appeared in the action and all proceedings were nothing more than two party disputes between Mr. Barbaria and the Internal Revenue Service which primarily centered around his failure to disclose information to them and their continued

attempts to get him to answer questions under oath. None of the attempts were successful.

Motions to dismiss Barbaria's case were filed by the Debtor and motions to dismiss the Trust case (later withdrawn) were filed by the Internal Revenue Service. This Court, in keeping with its earlier expressed intention that the cases probably should be dismissed entered a short memorandum opinion and order of dismissal as to both cases without a hearing. Following that hearing, the United States Trustee's office filed a request for rehearing and asserted that it was improper for the Court to dismiss the case without giving all parties and all Creditors the opportunity to demonstrate that the best interest of Creditors would be served by maintaining the case in bankruptcy court. The primary authority cited by the U.S. Trustee's office was the Littlecreek case which did not deal with dismissal but with the fact that the Court should not find bad faith on the part of a debtor without a full evidentiary hearing. The Internal Revenue Service joined in the United States Trustee's motion for reconsideration and creditors, K and B Lewis Texas Ltd. and Gary Drilling, also filed a joinder requesting reconsideration of the Court's dismissal. The Court granted the request and set the matter for hearing at which all parties were given the opportunity to demonstrate that there was some meaningful reason to keep this case in bankruptcy court.

This opinion constitutes the Court's findings of fact and conclusions of law in regard to that hearing and disposes of the issues before the Court. Upon reconsideration and upon allowing all parties to develop a full evidentiary record, the Court is convinced that its earlier inclination to dismiss these cases was the correct one. The United States Trustee elected not to participate in the hearing since its position was not that it had information which would require the case to remain in bankruptcy court, but simply that it was procedurally improper to dismiss the case without allowing all of the Creditors an opportunity to conduct a full evidentiary hearing. In essence, the relief requested by the United States Trustee had been granted by simply scheduling the evidentiary hearing.

The hearing, as had all other proceedings in this case, quickly turned into nothing more than a two party dispute between the Internal Revenue Service and Barbaria. Gary Drilling, who had filed an objection to dismissal on the grounds that it intended to file a dischargeability complaint under § 523 of the Code, did not appear at the hearing and K & B Lewis appeared at the hearing through counsel and simply reiterated by way of oral argument that it preferred that the cases not be dismissed and asserted that the best interest of Creditors would be met by maintaining the Barbaria entities in a bankruptcy proceeding. K & B had no evidence to present.

The Chapter 7 Trustee appeared and stated that he believed that the Chapter 7 estate was administratively insolvent. This was based on the Trustee's accumulation of approximately $30,000.00 in expenses in this matter to this point without the discovery of any significant assets with which to pay those expenses. The only asset that the Trustee has located and reduced to his possession is a diamond bracelet that was voluntarily relinquished to him from the Barbaria Family Trust which may or may not belong to Mr. Barbaria and which the Trustee believes to have a value of $15,000.00 to $20,000.00. The only evidence presented by the Trustee certainly preponderates in favor of dismissing these actions immediately.

The Internal Revenue Service presented its evidence which was simply a more expanded version of the evidence already adduced in the various other hearings this Court has conducted. It is obvious that Mr. Barbaria operates various business entities as either corporations or trusts and those entities carry such names as Intercoastal Corporation, Gulf Oil and Refining, Republic Steel Company and of course the Barbaria Family Trust. There was also evidence introduced that Intercoastal Corporation and Gulf Oil and Refining are both in bankruptcy in the Northern District of Texas. The status of those bankruptcies was not fully explained.

The Internal Revenue Service attempted to show the existence of assets which would make it beneficial for this case to remain in bankruptcy so that those assets could be liquidated. To that end, they placed a former employee of Mr. Barbaria on the stand and attempted to elicit information from him that would disclose the existence of those assets. The only thing that that testimony demonstrated was that the employee knew very little about Mr. Barbaria's business but the IRS did introduce into evidence a 1997 financial statement showing that Republic Steel had total assets slightly in excess of $3,000,000.00 with a net equity in excess of $2,000,000.00. It is certainly not clear that that situation exists today nor is it clear at all that that was a true financial picture of Republic Steel when the financial statement was prepared. It is a very cursory statement and there is nothing to support the figures nor to make them at all believable. There is also no indication that Republic Steel is the alter ego of the Debtor and that those assets could be reached by his personal Creditors. The only other assets of which the former employee was aware were vehicles and personal property which apparently were not properly disclosed in Mr. Barbaria's bankruptcy schedules. However, the problem with that evidence is that the employee's knowledge of the assets and what may have happened to them after he left Mr. Barbaria's employment is so sketchy that one cannot infer that they were still in Mr. Barbaria's possession at the time that the bankruptcy was filed. The Internal Revenue Service produced a revenue agent to testify as to his review of bank records for Republic Steel and Intercoastal Corporation of America and his first position was that he really didn't remember any of the facts but upon persistent questioning by counsel, the testimony revealed that there was apparently slightly in excess of $1,000,000.00 in deposits in these accounts in 1997. How this interacts with the bankruptcy of Intercoastal Corporation now pending in the Northern District of Texas and by what method any assets of Intercoastal Corporation would be available to the Debtors of Mr. Barbaria was not explored nor explained. The Government again elicited information concerning the existence of the house in which Mr. Barbaria lives and the fact that the house was titled in the name of the Barbaria Family Trust. Earlier testimony and the testimony at this hearing demonstrates clearly that there is virtually no equity in this house because of the large first and second mortgage already attached to it.

The Government produced clear evidence that Mr. Barbaria has failed to respond properly to interrogatories, motions to produce and motions to compel production. The Internal Revenue Service demonstrated clearly that Mr. Barbaria does not cooperate with them and does not cooperate in the conduct of his bankruptcy proceeding. The produced testimony from the landlord of the building where Mr. Barbaria maintains his office and demonstrated that he has had problems paying his rent, that he once gave the landlord a Rolex watch as security for payment of past due rent and that he leases the office in the name of the Barbaria Family Trust. The evidence clearly convinced this Court that Mr. Barbaria uses the Barbaria Family Trust which is the record owner of all of the corporate stock in Republic Oil Company, and Republic Steel and that any business transactions Mr. Barbaria conducts or conducted was through those corporations. There was no evidence adduced to show the extent of that business operation nor the nature of that business operation. There was no evidence produced to demonstrate a likelihood that any Creditor could pierce the corporate veil and seize those assets to satisfy Mr. Barbaria's personal obligations. Of course, even if there had been such evidence, that would not mitigate in favor of keeping these cases in bankruptcy. Piercing the corporate veil can be accomplished in any court of competent jurisdiction and the Internal Revenue Service can proceed with that action unhampered by any bankruptcy proceeding once this case is dismissed. The Internal Revenue Service's evidence clearly rehashed its difficulties in dealing with Mr. Barbaria in connection with his failure to file income tax returns since 1982 and his failure to pay that tax now that he has filed the returns. The evidence also clearly established that Mr. Barbaria is very adept at conducting whatever business he conducts through corporate entities and keeping little or nothing in his

own name. Whether this evidences a deliberate shielding of his assets through sham corporations as the Government contends, or whether he simply operates corporations and is never able to amass assets in his own name, is not clear from the evidence. One thing that is clear is that the Government's contention that they should be able to pierce the corporate veil and have all of the corporations declared sham entities can be done as well if not better in any court of competent jurisdiction as it can be in bankruptcy court. The Government clearly established that Mr. Barbaria owes approximately 1.2 million in past due income taxes. The Government alleges and asserts vigorously that the corporate entities of which they are aware are nothing but shams that Mr. Barbaria uses to conceal his personal assets. That may be true but there was no evidence to demonstrate that in this case. Even more importantly, if that were the case, that is not any reason to maintain these cases in bankruptcy court. Any court of competent jurisdiction can maintain a proceeding to reclaim those assets for the benefit of Mr. Barbaria's Creditors.

One of the factors mitigating most strongly against keeping this case in bankruptcy is the testimony of the Chapter 7 Trustee. It was clear from the Chapter 7 Trustee's testimony that he has expended a great deal of time and effort and has located nothing of any value. It is not reasonable to expect this Trustee to proceed with no hope of recovery of any of his expenses and it is certainly not in keeping with the needs of the bankruptcy system for this Trustee to devote an undue amount of time to this case when there are other liquidation proceedings that he should be pursuing. The fact that this case is over a year old and the Trustee's only assessment at this point is that the case is administratively insolvent certainly indicates that there is no future in maintaining this action in bankruptcy. Despite a valiant effort, the Internal Revenue Service as the only Creditor who has ever taken a real interest in the case was unable to demonstrate that there are any assets on the horizon or any other action that gives a realistic hope of the Trustee being able to amass any assets for the benefit of any Creditors. This case is and remains what it has always been and that is a

dispute between the Internal Revenue Service and Mr. Barbaria.

One of the cases cited by the Internal Revenue Service, *In re Dreamstreet, Inc.*, 221 B.R. 724 (Bankr.W.D.Tex.1998) as authority for the fact that the Debtor does not have an unfettered right to dismiss a Chapter 7 proceeding does not mandate a continuation of this case in bankruptcy court. In the *Dreamstreet* case, the Court made a specific finding that the Debtor moved to dismiss the Chapter 7 proceeding upon the Trustee's discovery of a fraudulent transfer action that looked extremely promising. In effect, a location of a potential valuable asset that could be reclaimed and distributed to Creditors. No such showing has been made in this case. The only concrete asset that has ever been demonstrated as an asset of the bankruptcy estate is the Debtor's home which is hopelessly encumbered and which would never produce enough funds for any Creditor other than the Internal Revenue Service to recover a small amount. In fact, there is no indication that there are any assets anywhere that would be available for distribution to any Creditor and certainly no indication that there are assets in excess of the 1.2 million dollars constituting the Internal Revenue Service's priority claim.

This hearing and all of the proceedings that have gone before it do nothing but convince this Court that its limited jurisdiction and function renders it incapable of granting to the Internal Revenue Service the relief that they really request in this controversy. The Internal Revenue Service can pursue all of its theories of recovery against Mr. Barbaria and his related entities in a court where there is no question but that jurisdiction over those entities can be acquired. This Court saw no evidence that there is any asset out there to be reclaimed and can discern no reason why the best interest of any party would be met by retaining this case in the bankruptcy court. Accordingly, both the Barbaria individual case and the Barbaria Family Trust case will be dismissed along with any related adversary proceedings.